UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 18-14330-MER |
| WAY TO GROW, INC., ) | |
| EIN:  90-10291021 ) | Chapter 11 |
| ) | |
| Debtor. ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

The Debtors and Debtors in Possession, Way To Grow, Inc. ("WTG") and Green Door Hydro And Solar Electric, Inc. ("GD") (collectively "Debtors"), by and through their attorneys, Kutner Brinen, P.C., move the Court pursuant to 11 U.S.C. § 363(c)(2) and Bankruptcy Rules 4001(b) and 9014 for entry of an order authorizing the Debtors' use of cash collateral, setting a final hearing on the use of cash collateral, and providing adequate protection to properly perfected secured creditors, and as grounds therefor states as follows:

**Background**

1. The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on May 18, 2018. The Debtors continue to operate their business as debtors-in-possession.

2. A third Debtor Pure Agrobusiness, Inc. is a holding company for the two Debtors who has also filed for relief under chapter 11. All three Debtors are engaged in business in the hydroponics business and related farming equipment sales.

3. The WTG business consists of 7 retail outlets in Colorado and an internet sales presence and GD has a sales facility in California. The Debtors generally sell equipment for indoor hydroponic gardening and related supplies. Hydroponic gardening is a large industry in the United States. While the hydroponic gardening equipment may and is used for many types of crops, the Debtors' future business expansion plan is tied to the growing cannabis industry which is heavily reliant on hydroponic gardening. Over the past year, due to political uncertainty, the Debtors and other industry leaders have suffered from declining sales and slower growth. The Debtors remain confident in the continued growth in hydroponic gardening. The Debtors do not own or do business with cannabis.

4. A review of the Debtor's business, generation of income, and its secured debt structure is set forth in the Declaration of Rick Byrd which will be filed in this case in advance of the hearing on this Motion.

5. The Debtors have one primary secured creditor who claims a lien on inventory and accounts. The secured creditor is Corey Inniss ("Inniss") who was the prior owner of WTG and sold the company 2016. The Inniss claim is based upon a promissory note dated 2016 in the principal amount of $20,500,000. The Note itself contains a security interest and a UCC-1 Financing Statement was recorded. Inniss will claim liens in the Debtor's assets including inventory and accounts receivable.

6. The cash collateral is derived from the sale of inventory. The Debtors' inventory remains stable in amount since it is generally replaced in the ordinary course of business. The Debtor's current account receivable balance is approximately $1,453,712, most of the sales are completed through credit cards. The Debtor also holds cash in bank accounts in the amount of approximately $1,162,268.

7. The Debtor is replacing its accounts, cash, and inventory in the ordinary course of its operations on an ongoing basis.

**Relief Requested**

8. The Debtor plans to continue operation of its business throughout the Chapter 11 case and propose a Plan of Reorganization which provides for the continuation of the Debtor's business. It is only through a Plan and the Debtor's continued operation that secured and unsecured creditors will see a recovery on account of their claims.

9. In order to pay necessary operating expenses, the Debtor must immediately use cash collateral in which one or more creditors may have an interest. The Debtor proposes to use cash collateral on an interim basis until such time as the Court schedules a final hearing on the use of cash collateral. At the final hearing, the Debtor will seek relief to use cash collateral during the term of this Chapter 11 proceeding.

10. The majority of the Debtor's revenues and available cash are derived from the sale of inventory. Without the use of cash collateral, the Debtor will have insufficient funding for business operations. Therefore, the Debtor's use of cash collateral during the interim period is necessary to avoid immediate and irreparable harm to the estate. Without the use of cash collateral, the Debtor

will not be able to pay employees, rent, utilities, materials and other costs associated with goods sold. The Debtor will be replacing its accounts, cash, and cash equivalents in the course of its daily operations and therefore the collateral base will remain stable and will improve over time.

11. The Debtor's cash position is projected to be positive after meeting expenses during the term of the Chapter 11 case.

12. In order to provide adequate protection for the Debtor's use of cash collateral to secured creditors, the Debtor has proposed adequate protection for secured creditors in the order of their relative priorities as set forth below. The proposal provides the following treatment on account of cash collateral:

    a. The Debtor will provide secured creditors with a post-petition lien on all post-petition inventory, accounts receivable, and income derived from the operation of the business and assets, to the extent that the use of the cash results in a decrease in the value of secured creditor's interest in the collateral pursuant to 11 U.S.C. § 361(2). All replacement liens will hold the same relative priority to assets as did the pre-petition liens;

    b. The Debtor will only use cash collateral in accordance with the Budget attached to this Motion as Exhibit B subject to a deviation on line item expenses not to exceed 15% without the prior agreement of secured creditors or an order of the Court;

    c. The Debtor will keep all of secured creditor's collateral fully insured;

    d. The Debtor will provide secured creditors with a complete accounting, on a monthly basis, of all revenue, expenditures, and collections through the filing of the Debtor's Monthly Operating Reports; and

    e. The Debtor will continue its ongoing operation and maintain a constant level of inventory which will preserve secured creditor's collateral position.

13. Should the Debtor default in the provision of adequate protection, the Debtor's approved use of cash collateral will cease and the secured creditor will have the opportunity to obtain further relief from this Court.

14. The Debtor's request to use cash collateral is made with a complete reservation of rights of secured creditors to their various claims and lien positions in and to the Debtor's assets and

the Debtors' reservation of rights to challenge, avoid, or otherwise contest the secured creditor lien and claim.

15. Approval of the Debtor's use of cash collateral in accordance with this Motion is, on an interim basis and a final basis, in the best interest of the Debtors, their creditors and the estates as it will allow the Debtors to maintain their ongoing business operations, allow the Debtors to generate revenue, and provide the Debtors with an opportunity to propose a meaningful Plan.

16. The Debtors' propose the use of cash collateral in accordance with the Budget that is attached hereto as Exhibit A. The Budget projects a 30 day use of funds for both the Colorado and California operations.

**Relief Requested on an Interim Emergency Basis**

17. Without the immediate use of cash collateral, the Debtors will not be able to fund ongoing business operations. The Debtors are filing a separate motion requesting an expedited entry of an order approving the interim use of Cash Collateral pursuant to this Motion.

WHEREFORE, the Debtors pray that the Court enter an Order, authorizing the Debtors' use of cash collateral in accordance with this Motion, authorize the Debtors to provide adequate protection to the secured creditors with an interest in cash collateral in the form of that set forth herein, and for such further and additional relief as to the Court may appear proper.

DATED: May 21, 2018                    Respectfully submitted,

By: */s/ Lee M. Kutner*
Lee M. Kutner, # 10966
**KUTNER BRINEN, P.C.**
1660 Lincoln Street, Suite 1850
Denver, CO 80264
Telephone: (303) 832-2400
Telecopy: (303) 832-1510
Email: lmk@kutnerlaw.com

30 DAY CASH REQUIREMENTS - PUREAGRO & SUBSIDIARIES

|  | CO | CA |  |
|---|---|---|---|
| CASH |  | $864,741.65 |  |
| CASH IN TRANSIT |  | $186,312.18 |  |
| ACCOUNTS RECIEVABLE |  | $1,453,712.70 |  |
|  |  |  | $2,504,766.53 |
| **MONTHLY EXPENSES:** | CO | CA |  |
| COST OF GOODS | $1,772,945.00 | $212,954.00 |  |
| BUILDING | $180,814.00 | $15,263.00 |  |
| COMMUNICATION | $11,486.00 | $1,547.00 |  |
| MARKETING | $0.00 | $0.00 |  |
| OPERATIONAL | $73,018.00 | $25,526.00 |  |
| PERSONEL | $244,783.00 | $33,715.00 |  |
| AUTOMOBILE | $500.00 | $2,207.00 |  |
| OTHER EXPENSES | $500.00 | $500.00 |  |
| SUB TOTAL - |  | -$2,575,758.00 |  |
| **REORGANIZATIONAL SERVICES:** |  |  |  |
| LEGAL |  |  |  |
| ACCOUNTING |  |  |  |
| UNFORCASTED |  |  |  |
| CONSULTING |  |  |  |
| **PUBLIC EXPENSES:** |  |  |  |
| AUDIT |  |  |  |
| CORPORATE STOCKS |  |  |  |
| INVESTOR RELATIONS/CAPITAL RAISE |  | $10,000.00 |  |
| LEGAL |  |  |  |
| BOARD OF DIRECTORS |  | $13,000.00 |  |
| TOTAL - |  |  | -$2,598,758.00 |
|  |  |  |  |
| ESTIMATED INCOMING CASH |  |  | $2,400,000.00 |
| 30 DAY CASH POSITION |  |  | $2,306,008.53 |

EXHIBIT A